■ TEVIRO CASUALS, INC., Respondent, v AMERICAN HOME ASSURANCE COMPANY, Appellant. — Judgment, Supreme Court, New York County, entered March 28, 1980 in favor of plaintiff, following a jury trial, for $15,209, in an action to recover under an insurance policy for employee theft, unanimously reversed, on the law, with costs, and the complaint dismissed. Defendant appeals from a judgment entered after a jury trial in an action to recover for the value of property allegedly lost as a result of employee dishonesty under the crime coverage provisions of an insurance policy. Plaintiff, which manufactures and sells ladies' dresses, employed in the first week of April, 1976 one Larry Constantine to work in its shipping department. Constantine's duties included responsibility for collecting garbage in large garbage bins and transporting the bins to the freight hallway on the street level for collection the following morning. Sometime in April, plaintiff's president noted what appeared to him to be shortages in the inventory and the employees were thereafter closely watched. On May 28, 1976, Constantine was observed placing some dresses in a carton which he then put into a garbage bin. The police were alerted and apprehended Constantine that evening when he attempted to retrieve the carton from the garbage bin left in the

freight hallway on the street level. Four dresses, with an estimated value of $20, were found in the carton. Thereafter an accountant prepared for plaintiff a unit reconciliation of stock for the months beginning November, 1975 and ending May, 1976. He determined that for the month of November, 1975, 382 garments were missing; for December, 1975, 238 garments; 20 for January; 213 for February; and 32 for March. For the month of April, 1976, the accountant concluded that some 3,595 garments were missing, and that 1,297 were missing for May, 1976. After the loss was reported, defendant retained an accountant to conduct an audit of plaintiff's books and records. He determined that for the months of April and May, 1976, the maximum shortage was 2,695 garments with a policy value of $15,209. In its verdict in favor of the plaintiff, the jury accepted as accurate this estimate by the defendant's accountant. The principal issue on this appeal is presented by defendant's contention that the evidence was legally insufficient to sustain any verdict for plaintiff in view of the provisions of the following exclusion: "Section 2. This endorsement does not apply * * * (b) * * * to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of Money, Securities or other property which the Insured can prove, through evidence wholly apart from such computations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees". This exclusion, for many years the standard one in this kind of policy, has been the subject of extensive judicial consideration with varying results. (See, e.g., *Dunlop Tire & Rubber Corp. v Fidelity & Deposit Co. of Maryland,* 479 F2d 1243; *United States Smelting Refining & Min. Co. v Aetna Cas. & Sur. Co.,* 372 F Supp 489; *American Thermostat Corp. v Aetna Cas. & Sur. Co.,* 59 AD2d 965, mot for lv to app den 43 NY2d 647; *Hoboken Camera Center v Hartford Acc. & Ind. Co.,* 93 NJ Super 484.) A lucid analysis of the problem of construction presented was set forth in *Dunlop Tire & Rubber Corp. v Fidelity & Deposit Co. of Maryland* (479 F2d 1243, 1246, *supra)* where the court observed: "The language preceding the first semicolon clearly indicates that a claim at all dependent upon an inventory or profit and loss computation is to be excluded from the coverage of the policy. The insured cannot depend upon such evidence to establish his prima facie case. The language following the first semicolon indicates, however, that where the insured has some independent evidence that a loss was caused by employee fraud or dishonesty, the inventory or profit and loss computation will be admitted as corroborative evidence to help the insured meet his burden of proof. But there must be some evidence 'wholly apart from such computations' both as to the existence and amount of loss; otherwise the claim is excluded." Further on in the same opinion, the court went on to observe (p 1246): "In the typical case, the insured has evidence, other than inventory computations, of the factual existence of a loss due to employee dishonesty. The insured, however, does not have independent evidence indicating the full extent of the claimed loss. The courts are divided as to whether, under such circumstances, inventory computations may be introduced to prove the full amount of the loss." In *Dunlop (supra,* p 1247), the court found it unnecessary to decide which of the two lines of decisions it would follow in view of the "complete absence of proof of employee dishonesty independent of the inventory computations." We think a similar result is indicated here. The single material circumstance distinguishing the facts here from those presented in *Dunlop* is the arrest of an employee in unlawful possession of four garments

with a value of $20. Even under the line of cases permitting inventory computations to prove the full amount of the loss where there is evidence of a loss due to employee dishonesty, which is apparently the majority view, we doubt that such limited evidence of employee dishonesty is legally sufficient under the exclusion clause to permit the use of an inventory computation to establish (1) that there was a loss of thousands of garments and (2) that the loss was attributable to employee dishonesty. (See *United States Smelting Refining & Min. Co. v Aetna Cas. & Sur. Co.*, 372 F Supp 489, *supra; American Thermostat Corp. v Aetna Cas. & Sur. Co.*, 59 AD2d 965, *supra; Ag-Met, Inc. v Insurance Co. of North Amer.*, 79 AD2d 1114.) Concur — Birns, J. P., Sandler, Silverman and Fein, JJ.